Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
724 South Spring Street, 9th Floor
Los Angeles, California 90014
Telephone:  (213) 260-9449
Facsimile:   (213) 260-9450

Craig Wilke (SBN 150728)
*craig@craigwilkelaw.com*
LAW OFFICE OF CRAIG WILKE
305 North Harbor Boulevard, Suite 216
Fullerton, California 92832-1901
Telephone: (714) 870-8900
Facsimile: (714) 879-2278

Attorneys for Defendant
Shen Zhen New World I, LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHEN ZHEN NEW WORLD I, LLC,<br><br>Defendant. | CR-20-326(A)-JFW-4<br><br>**DEFENDANT SHEN ZHEN NEW WORLD I, LLC'S RESPONSE TO PRESENTENCE INVESTIGATIVE REPORT, RESPONSE TO GOVERNMENT'S SENTENCING POSITION, AND SENTENCING MEMORANDUM; EXHIBITS**<br><br>Assigned to Hon. John F. Walter |

LAW
OFFICES OF
RICHARD M.
STEINGARD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Shen Zhen New World I, LLC ("SZNW"), by and through its counsel of record, Richard Steingard and Craig Wilke, hereby files its response to the Probation Department's Presentence Investigative Report and the Government's Sentencing Position.  In addition, SZNW submits this Sentencing Memorandum and supporting exhibits to assist the Court in fashioning a sentence that is sufficient, but not greater than necessary to fulfill the goals of sentencing.

DATED: April 14, 2023          By:    */s/ Richard M. Steingard*
                                       RICHARD M. STEINGARD
                                       CRAIG WILKE
                                       Attorneys for Defendant
                                       SHEN ZHEN NEW WORLD I, LLC

LAW
OFFICES OF
RICHARD M.
STEINGARD

ii

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................1

II.  OBJECTIONS TO PSR ......................................................................1

III. THE PSR AND GOVERNMENT'S SENTENCING
     RECOMMENDATIONS ......................................................................2
     A. The Fine Amount .......................................................................3
     B. The Imposition of a Period of Probation....................................9
     C. Conditions of Probation ...........................................................10
        1. Unopposed Conditions of Probation...................................10
        2. Opposed Conditions of Probation.......................................11
           a. Proposed Condition 13 ..................................................12
           b. Proposed Conditions 4, 16, and 17 ...............................14
           c. Proposed Conditions 14, 15, and 16 .............................15
           d. Community Service .......................................................16

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

# TABLE OF AUTHORITIES

2

## STATUTES

3

4  18 U.S.C. § 3553(a) ...........................................................................6, 9

5  18 U.S.C. § 3563(b) ...........................................................................10, 16

6

## FEDERAL CASES

7

8  *McDonnell v. United States*,
9      579 U.S. 550 (2016)...............................................................................5

10  *United States v. Adelson*,
11      441 F. Supp. 2d 506 (S.D.N.Y. 2006) .................................................9

12

## UNITED STATES SENTENCING COMMISSION GUIDELINES

13

14  U.S.S.G., Ch. 8, Introductory Commentary.................................................3

15  U.S.S.G. § 8D1.......................................................................... 9-10

16

## MISCELLANEOUS AUTHORITIES

17

18  John C. Coffee, Jr., *"No Soul to Damn: No Body to Kick"*:
19  *An Unscandalized Inquiry into the Problem of Corporate Punishment,*
    79 Mich. L. Rev. 386 (1981).......................................................12

20

21  Comment, *Increasing Community Control over Corporate Crime-*
22  *A Problem in the Law of Sanctions,* 71 Yale L.J. 280 (1961) ........................... 12-13

23  Herbert L. Packer, *The Limits of the Criminal Sanction* 361 (1968).......................12

24  Christopher A. Wray, *Corporate Probation Under The New Organizational*
25  *Sentencing Guidelines*, 101 Yale L.J. 2017 (1992) .................................................12

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INDEX OF EXHIBITS

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| A | Letter of Russell Cox | 2:15; 8:3; 8:28; 9:4; 14:10; 16:4 |
| B | Hazens Non-Prosecution Agreement | 4:10 |
| C | Government's press release re: Hazens | 4:10 |
| D | Carmel Partners Non-Prosecution Agreement | 4:21 |
| E | Government's press release re: Carmel Partners | 4:21 |

LAW
OFFICES OF
RICHARD M.
STEINGARD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

SZNW hereby submits its response to the Probation Department's Presentence Investigative Report ("PSR"), its Recommendation Letter, and the government's sentencing recommendations.  (ECF 879, 878, and 885, respectively.)  As set forth below, SZNW opposes the imposition of the *maximum* fine and *maximum* period of probation, as well as some of the Probation Office and government's proposed terms and conditions of probation.  SZNW asks that the Court impose a fine of between $1 and 2 million and that any probationary period be for no more than three years – this fine amount and length of probation would be consistent with the fines and oversight periods imposed on other offending corporate defendants in this case.  SZNW has no objections to most of the Probation Office and government's recommended terms of probation but opposes the proposed requirements that SZNW publicize its charges, conviction, and sentence; disclose its books and records; participate in an ethics compliance program; and perform community service.

### II.

### OBJECTIONS TO PSR

SZNW does not have any legal objections to the PSR and agrees with the PSR's guideline calculations.  SZNW submits the following factual objections to the PSR:

A. Paragraph 18 – The PSR states, in relevant part, "At the time of purchase [of the LA Grand and Sheraton Universal hotels], Huang intended to redevelop both properties, which would need to go through the Los Angeles City approval process."  This sentence is at least partially inaccurate.  At the time Huang purchased the Sheraton Universal and LA Grand Hotel, he had not decided to redevelop either hotel—that occurred years later—much less

what a redevelopment would look like.  Further, as was stated at trial, while all development projects need to go through some aspects of the City of Los Angeles' approval process, not all projects require City Council approval.

B. Paragraph 19 – The PSR states, in relevant part, "In 2013, Chan introduced Huang to Councilmember Huizar and his Special Assistant George Esparza, and the bribery scheme began."  We agree that in 2013, Huang met Huizar and Esparza, but disagree with the assertion that "the bribery scheme began."

C. Paragraph 38 –The PSR states, in relevant part, "[SZNW Managing Director Russell] Cox did not report any damage to Shen Zhen Company's reputation as a result of the instant offense."  This is incorrect.  Mr. Cox advises that SZNW did suffer reputational harm as a result of this prosecution but that the full extent of the harm is difficult to determine because the L.A. Grand has been (and remains) closed to the public due to the COVID pandemic. (Letter of Russell Cox, attached as Exhibit A.)

### III.

### THE PSR AND GOVERNMENT'S SENTENCING RECOMMENDATIONS

For the most part, the Probation Office and the government recommend the same sentence: the imposition of the statutory *maximum* fine of $4 million and the statutory *maximum* period of probation of five years, with numerous terms and conditions.  The government also suggests that SZNW perform community service as a condition of probation and that it pay the costs of prosecution, neither of which were included in the PSR.  As noted above, SZNW disagrees with the proposed fine amount and period of probation, as well as some of the suggested probationary conditions.[1]

---

[1]    Per the Court's order on January 12, 2023, SZNW is awaiting the government's production of the proposed costs of prosecution and any supporting

In considering a sentence for a corporation, the Sentencing Guidelines provide four general goals: (1) remedy the harm caused by the offense; (2) when an organization is operated primarily for a criminal purpose, a fine should attempt to divest the organization of all its assets; (3) a fine should be based on the seriousness of the offense and culpability of the organization; and (4) probation should be imposed when needed to ensure another sanction will be implemented or ensure that steps will be taken within the organization to reduce the likelihood of future criminal conduct.  U.S.S.G., Ch. 8, Introductory Commentary.

The first and second of the listed principles are clearly inapplicable to this case: there is no "harm" to "remedy" and SZNW was not "operated primarily for a criminal purpose."  The third principle—the imposition of a fine—is applicable. As we discuss below, in light of the actual offense conduct and the sentences imposed on other corporate defendants in this case, we disagree with the imposition of the *maximum* fine amount.  The fourth principle also seems inapplicable: there is no need to ensure that any imposed sanction will be implemented—they all will be—nor is there a concern about reducing the likelihood of future criminal conduct—there will not be any.

A. The Fine Amount

The PSR and government recommend the imposition of the statutory maximum fine of $4 million.  The government correctly notes that this amount is far less than the calculated Guideline range (ECF 895 at 7), but the government has not been concerned with this fact when it imposed fines on other corporate defendants in this case.

For instance, between 2014 and November 2018 (roughly the same period as alleged against SZNW), Shenzhen Hazens (aka Jia Yuan USA Co.) and its principals provided Councilmember Huizar with various financial benefits in

evidence.  (ECF 904.)  Accordingly, in this sentencing memorandum, SZNW does not address the proposed costs of prosecution.

connection with its development of the Luxe Hotel, a projected $700 million venture.  In exchange for Hazens' and its principals' bribes, Huizar performed several assertedly official acts, including resolving the companies' noncompliance with the American Disabilities Act, presenting a written motion to the PLUM Committee allowing the project to move forward, exerting pressure on other City officials to approve the Luxe Hotel project, and voting to approve the project.  In October 2020, the government and Hazens entered into a Non-Prosecution Agreement ("NPA") which detailed the above facts and imposed a fine of *$1,050,000*, along with no criminal prosecution for the corporate defendants or their principals.  (*See* Exhibit B and C, Hazens NPA and government's press release, respectively).

Along the same lines, the government entered into an NPA with Carmel Partners (aka CP Employers, Inc.) for its bribes to Huizar during the same time period – 2014 through 2018 – in connection with a 35-story redevelopment project called the Matteo Project.  In exchange, Huizar performed several assertedly official acts, including using his position as the head of the PLUM Committee to reject the City Planning Commission's recommendation for low-income housing and denying a labor union appeal that had been filed against the project.  The Carmel Partners' NPA recounted the above facts and imposed a fine of *$1,200,000*, along with no criminal prosecution of the corporate defendants and its principals. (*See* Exhibit D and E, Carmel Partners NPA and the government's press release, respectively).

As in every multiple defendant case, there are differences between defendants, and we do not suggest that SZNW is necessarily on the same footing as Hazens or Carmel Partners.  Certainly, one difference between these corporate defendants is that Hazens and Carmel Partners cooperated with the government (a decision that was likely prompted by the government's offer of an NPA), while SZNW did not settle its case prior to indictment and proceeded to trial.  Another

difference is that in exchange for the bribes, Huizar provided Hazens and Carmel Partners with several assertedly official acts; in the instant case, SZNW and its principal, Wei Huang, never asked Huizar to perform any official act in connection with the redevelopment of the L.A. Grand Hotel, nor did Huizar perform or agree to perform an official act in connection with SZNW's redevelopment project. Rather, only as to SZNW, the government's theory of bribery is that Huang provided financial benefits to Huizar in the event that he (Huang) might someday need to ask Huizar for some unknown official act in connection with the redevelopment of the L.A. Grand, an alleged contingency plan that was never espoused, never materialized, and never came to fruition.[2]

The government's sentencing memorandum states, "The underlying investigation in this matter has revealed a culture of corruption in the City of Los Angeles that is fostered by the lucrative real estate development market, coupled with the unique discretionary power wielded by Los Angeles government officials

---

[2]     Notably, the government-drafted plea agreement and factual basis for Jose Huizar addresses the alleged "L.A. Grand Bribery Scheme." (ECF 910-1 at ¶¶ 6-25.) It states, in relevant part, that Huizar, Wei Huang and others "established a mutually beneficial arrangement to exchange a stream of benefits for official acts," and thereafter lists a litany of alleged financial benefits. (*Id*. at ¶¶ 8-12.) One subsection is entitled "Official Acts by Defendant Huizar" but fails to identify *any* official act that Huang requested of Huizar, or that Huizar performed or agreed to perform in connection with the redevelopment of the L.A. Grand Hotel. (*Id*. at ¶¶ 13-25.) Instead, the factual basis asserts that "Huizar was *poised* to significantly benefit Huang's desire and plans to redevelop the L.A. Grand Hotel" and that the "project *would require* official acts from Huizar at various stages of the City approval process." (*Id*. at ¶ 19; emphasis added.) To the contrary, multiple witnesses at trial, such as Rose Fistrovic, Jeff DiMarzio, and Shawn Kuk, made clear that there was City-wide and uniform support for the project, and that Huizar would be long out of office before the project came before the City Council. Further, the Supreme Court has made clear that a financial benefit to an elected official who was "poised" to help a project that "would require" an unspecified official act is not a bribe. *McDonnell v. United States,* 579 U.S. 550 (2016).

over that market, allowing them disproportionate control over which development companies succeed and which fail."  (ECF 895 at 2.)  While this may have been true for the Luxe Hotel and Matteo projects, it is not applicable to SZNW's redevelopment of the L.A. Grand.  Yet, the government seeks a fine against SZNW that is roughly *four times* that which it sought in its non-prosecution agreements with two entities that actually sought, paid for, and received multiple assertedly official acts from Councilmember Huizar.  Under these circumstances, the imposition of a $4 million fine on SZNW would create a sentencing disparity with the punishments for other similarly situated corporate offenders who engaged in the same, or more egregious, alleged misconduct.  18 U.S.C. § 3553(a)(6) (in imposing sentence, the court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").[3]

In pushing for its sentencing recommendations, the government claims to be particularly galled by the fact that the SZNW is still operational and has plans to remodel the L.A. Grand Hotel.  It states, "a firm sentence is needed to protect the public from further crimes by this company, which continues to operate a multi-million-dollar business within this district with the same culpable Chairman at its helm" (ECF 895 at 2; emphasis in original); "[a]ccording to the PSR, the L.A. Grand Hotel has continued to operate throughout the time the First Superseding Indictment ("FSI") pending and during this trial. Moreover, defendant SZNW has advised USPO that, even after its convictions, it intends to undertake a $25- to

---

[3]      Furthermore, if George Esparza is to be believed, Huizar targeted *all* development projects in his district for bribes and delayed or impeded any non-bribing companies and their owners.  Tr. 733-34 (Esparza: "In general, what the pay-to-play scheme is, again, any stakeholder, any person who didn't provide the councilmember with any benefits, essentially didn't play or didn't pay, then the councilmember would essentially pay no attention to their project. Yeah, no pay, no play.")  If this is true, the overwhelming majority of corporate offenders and their principals avoided any prosecution or sanctions.

1   $35-million renovation of the L.A. Grand Hotel" (*Id*. at 8); "Huang maintains his
2   role at the helm of SZNW from China, all while continuing to reach into the
3   Central District of California to carry on with business as usual for the L.A. Grand
4   Hotel" (*Id*. at 9); "[e]ven more troublingly, this is true even as Huang continues to
5   evade his own federal criminal charges by remaining a fugitive from justice and
6   refusing to appear in this district, all while benefitting from the district and
7   profiting off of its citizens" (*Id*. at 9-10); and "SZNW has continuously operated
8   the L.A. Grand Hotel. And defendant has stated its intention to put in $25- to $35-
9   million in renovations for the L.A. Grand Hotel in the coming future" (*Id*. at 12).
10          The government's claimed indignation is badly misplaced.
11          *First*, as to SZNW's plans to remodel the L.A. Grand, we fail to see
12   anything sinister or wrong in renovating a hotel that was last refurbished over a
13   decade ago.  *See* Long Beach Business Journal, Dec. 2, 2019, "*Regular*
14   *Renovations Keep Hotels Relevant And Competitive*" (According to John
15   Thompson, Managing Director of the Westin Hotels, "Different hotel companies
16   have different cycles, but generally every five to seven years there's a soft goods
17   renovation and about every 10 years there is a hard goods renovation… The busier
18   the hotel is, the more wear and tear you get in these spaces. And so it's incumbent
19   on hotels to keep them fresh and new from an attractability perspective.")  Indeed,
20   a remodeled L.A. Grand would *benefit* the City of Los Angeles in numerous
21   ways—including new jobs, additional tourism, higher taxes, and greater revenue
22   for the City.  While the government apparently prefers that SZNW simply shutter
23   its hotel doors, the company's plan to renovate is hardly something to protest,
24   much less cite as support for the imposition of the maximum punishment.
25          *Second*, contrary to the government's claim, for the past three years SZNW
26   has not "carr[ied] on with business as usual."  (ECF 895 at 12.)  Rather, as the PSR
27   notes, SZNW is one of only a handful of major hoteliers to join in Los Angeles'
28   Project Roomkey.  (PSR, ¶¶ 34-37.)  As part of Project Roomkey, SZNW and the

L.A. Grand have supplied *thousands* of the City's most vulnerable members with stable housing, food, security, and other meaningful services during one of the deadliest times in our history. (*See* Letter of Russell Cox, Exh. A.) By participating in this program, SZNW not only provided badly needed aid to the City's homeless population but was able to employ 60-70 of its housekeeping and kitchen staff who would otherwise have been unemployed. (*Id.*)[4]

SZNW's participation in Project Roomkey began *prior* to the issuance of the indictment, continued *during* the pretrial and trial proceedings, and *remains* to this day. (*Id.*) Its significance cannot be overstated. "Deaths of homeless people in Los Angeles County soared by 56% in the year after the start of the pandemic… [L.A. Public Health Director Barbara Ferrer stated that] Project Roomkey hotel rooms can prevent medically vulnerable people from living in a situation that would create more danger for them because of COVID-19." L.A. Times, April 22, 2022, "*L.A. County homeless deaths surged 56% in pandemic's first year.*"

The L.A. Grand's involvement was touted as a major success and "a cornerstone of Los Angeles' fight against homelessness." L.A. Times, January 14, 2023, "*L.A. to keep downtown hotel open as homeless housing for another year.*" Moreover, at the behest of Mayor Bass, SZNW agreed to continue providing shelter, meals, and services to the homeless until at least January 2024. *Id.* As the L.A. Times reported, "The hotel, which had provided the city with about 480 rooms, is expected to give Bass a critical tool as she ramps up the activities of Inside Safe, her initiative to dismantle homeless encampments and bring unhoused people indoors." *Id.*

---

[4]     Additionally, Owner Representative Russell Cox states in his letter, "I should also note that during the pandemic, when we were only able to employ a small staff, SZNW's ownership voluntarily agreed to contribute nearly one million dollars to a health and welfare fund to extend our workers' medical benefits. This was done quietly, without fanfare, but made a meaningful difference in our employees' lives." (Letter of Russell Cox, Exh. A.)

LAW OFFICES OF RICHARD M. STEINGARD

*Third*, combining the above two points, the hotel *requires* significant renovation (1) a decade after the last remodel and (2) having just housed and accommodated thousands of homeless residents over a four-year period.  (*See* Letter of Russell Cox, Exh. A.)

The government's refusal to even acknowledge SZNW's participation in Project Roomkey speaks volumes.  Although SZNW has not sought public recognition for its participation in Project Roomkey, its conduct is admirable and praiseworthy and should be credited when the Court decides on a fair and just sentence.  *See e.g.*, *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'").

For all the above reasons, we respectfully recommend that the Court adopt the government's previously assessed financial penalties for offending corporate defendants in this case and impose a fine on SZNW of between $1 and $2 million.

B. The Imposition of a Period of Probation

The Guidelines address when it is appropriate to place an organization on probation.  It lists eight possible bases for the imposition of a term of probation: (1) when necessary to secure a payment of restitution; (2) when a fine is not immediately paid in full; (3) an organization with more than 50 employees is required to have a compliance program; (4) the organization had previously engaged in similar misconduct; (5) a high-level person with the organization committed the instant offense and had previously committed the same offense; (6) when necessary to ensure changes within the organization to avoid future

criminal conduct; (7) if no fine is imposed; and (8) when necessary to accomplish one of the goals of sentencing at 18 U.S.C. 3553(a)(2).  U.S.S.G. § 8D1.1.

Most of these factors do not apply to the instant case.  Thus, for the reasons set forth above, we propose that the Court impose a three-year probationary period, consistent with the length of time that the government, Hazens, and Carmel Partners agreed was appropriate in their non-prosecution agreements.

C. Conditions of Probation

*1. Unopposed Conditions of Probation*

As the PSR notes, the Court must impose certain mandatory conditions of probation.  (PSR, ¶ 79, citing 18 U.S.C. § 3563 and U.S.S.G. § 8D1.3.)  The Probation Office proposes the imposition of three conditions, identified as Proposed Conditions 1-3 in its Recommendation Letter.  (Prob. Ltr. at 1-2, 5.) SZNW has no objection to these conditions.[5]

In addition, the PSR notes that the Guidelines' non-binding "Policy Statement" provides a list of discretionary probationary conditions for organizations.  (PSR, ¶¶ 80-1, citing U.S.S.G. § 8D1.4.)  The Probation Office and government recommend that the Court impose 14 such conditions, listed in the Recommendation Letter as Proposed Conditions 4 through 17.  (Prob. Ltr. at 2-3, 5.)  SZNW has no objection to Proposed Conditions 5 through 12.[6]

---

[5]    The conditions are as follows:
1.  As Second Amended General Order 20-04 applies to individuals, it shall be deleted from the original Court order.
2.  During the period of probation, the defendant organization shall pay the special assessment and fine in accordance with this judgment's orders pertaining to such payment.
3.  The defendant organization shall not commit another federal, state, or local crime.

[6]    These conditions are as follows:

LAW OFFICES OF RICHARD M. STEINGARD

1

2. *Opposed Conditions of Probation*

2

As discussed below, SZNW objects to the Probation Office's Proposed

3

Condition 4, and 13 through 17.  As to all of these probationary conditions, the

4

Probation Office's Recommendation Letter states that they are supported by the

5

PSR at paragraphs 16-18.  (Prob. Ltr. at 5.)  This is likely a typographical error, as

6

the cited paragraphs concern either "Related Cases" or the basis for the "Offense

7

Conduct" section of the report.  (PSR, ¶¶ 16-18.)  SZNW has not identified any

8

_____

9

5.   Within 30 days from the date of this judgment, the defendant organization

10

shall designate an official of the organization to act as the organization's
representative and to be the primary contact with the Probation Officer.

11

6.   The defendant organization shall answer truthfully all inquiries by the

12

Probation Officer and follow the instructions of the Probation Officer.

13

7.   The defendant organization shall notify the Probation Officer ten days prior
to any change in the principal business or mailing address or within 72 hours

14

if advance notice is not possible.

15

8.   The defendant organization shall permit a Probation Officer to visit the
organization at any of its operating business sites.

16

9.   The defendant organization shall report to the Probation Officer as directed

17

and shall submit a truthful and complete written report within the first five
days of each month.

18

10.  The defendant organization shall be required to notify the Court or Probation

19

Officer immediately upon learning of (1) any material adverse change in its

20

business or financial condition or prospects, or (2) the commencement of
any bankruptcy proceeding, major civil litigation, criminal prosecution, or

21

administrative proceeding against the organization, or any investigation or
formal inquiry by government authorities regarding the organization.

22

11.  The defendant organization shall notify the Probation Officer immediately of

23

any intent to sell the organization, change the name of the organization,

24

merge with another business entity, or otherwise dissolve and/or modify, in
any form or manner, the organizational structure from its present status.

25

12.  If the defendant organization changes its name, or merges with another

26

company through a stock or assets purchase, the renamed, newly-created, or

27

merged company shall be obliged to meet all of the obligations of the
defendant organization in accordance with this judgment's orders pertaining

28

to payment of the fine and special assessment.

portion of the PSR that supports these proposed probationary conditions.  SZNW also objects to the government's recommendation that it perform community service.  We address each of these proposed conditions below.

      a.  <u>Proposed Condition 13</u>

      Proposed Condition 13 would require that SZNW publicize the nature of its offense, its conviction, its sentence, and the steps taken to prevent reoccurrence. (Prob. Ltr. at 3.)  It requires that such publicizing occur on the company's website in Chinese and English, as well as in the L.A. Times, and World Journal.  (*Id*.)  It also requires that SZNW submit a draft of the notification to the Probation Office for approval.  (*Id*.)  For numerous reasons, this condition is onerous, unnecessary, and detrimental to the company, its employees, and the community.

      *First*, the concept of ordering a defendant to publicize the offense and conviction, referred to as an "adverse publicity sanction," has long been criticized. *See e.g.*, Christopher A. Wray, *Corporate Probation Under The New Organizational Sentencing Guidelines*, 101 Yale L.J. 2017, 2037 (1992) ("[A] judge making adverse publicity a condition of probation has no guidance on the media to specify, the amount the company must spend, the size of the campaign, or the degree to which the company may include other messages in the advertisements. The 'loose cannon' problems identified by commentators seem alive and well in this part of the guidelines."); John C. Coffee, Jr., *"No Soul to Damn: No Body to Kick": An Unscandalized Inquiry into the Problem of Corporate Punishment,* 79 Mich. L. Rev. 386, 427 (1981) ("Adverse publicity is something of a loose cannon; its exact impact cannot be reliably estimated nor is it controllable so that only the guilty are affected."); Herbert L. Packer, *The Limits of the Criminal Sanction* 361 (1968) (finding "very little evidence to suggest that the stigma of criminality means anything very substantial in the life of a corporation"); and Comment, *Increasing Community Control over Corporate Crime-A Problem*

LAW
OFFICES OF
RICHARD M.
STEINGARD

1    *in the Law of Sanctions,* 71 Yale L.J. 280, 287-9 n.35 (1961) (questioning
2    effectiveness of "moral opprobrium" on corporate crime).

3           *Second*, the nature of the offense and the conviction have already been
4    heavily reported in innumerable media outlets, including the L.A. Times[7] and the
5    World Journal.[8]  Undoubtedly, media periodicals, including the L.A. Times and
6    World Journal, will publicize the Court's sentence of SZNW.  Moreover, a
7    "Google" search of "Shen Zhen New World I, LLC" reveals numerous links to the
8    instant prosecution, including the government's various press releases.  In this
9    digital age, the publication of SZNW's alleged misconduct will exist indefinitely.
10   Thus, the claimed goal of this proposed condition—to serve as a deterrent to other
11   development companies—has already been achieved.

12          *Third*, Shen Zhen New World I, LLC—the convicted defendant—does not
13   have its own website.  Rather, it is identified as a subsidiary on the website of the
14   parent company, New World Group, which includes numerous other uninvolved
15   entities.  *See* http://www.sznewworld.com/en/index.asp.

16          *Fourth*, the proposed mandated publication of SZNW's prosecution,
17   conviction, and sentence will cause unnecessary harm to innocent management

18

19

20   [7]     *See e.g.*, https://www.latimes.com/california/story/2020-11-30/los-angeles-
     city-hall-corruption-raymond-chan,
21   https://www.latimes.com/california/story/2022-01-07/court-rejects-huizar-request-
22   dismiss-corruption-charges,  https://www.latimes.com/california/story/2022-10-
     28/huizar-developer-bribery-trial-los-angeles-city-hall-corruption,
23   https://www.latimes.com/california/story/2022-11-10/huizar-family-los-angeles-
24   bribes-developer-trial.

25   [8]     *See e.g.*, https://www.worldjournal.com/wj/story/121359/6392283,
26   https://www.worldjournal.com/wj/story/121544/6022509,
     https://www.worldjournal.com/wj/story/121359/6686004,
27   https://www.worldjournal.com/wj/story/121360/6721030,
28   https://www.worldjournal.com/wj/story/121359/6757283.

members, staff, and employees who were *uninvolved* in the case.  As one legal commentator noted, "Adverse publicity sanctions… contain meaning only by virtue of the reduced profitability rising from the abandonment by customers and suppliers."  William S. Laufer, *Culpability and the Sentencing of Corporations,* 71 Neb L. Rev. 1049, 1081 (1992).  SZNW's Owner Representative Russell Cox echoes these remarks in his letter, stating that "requiring that we post a notice in various publications and on the parent company's website would have a severe negative impact on our reputation and ability to book business, again resulting in less jobs and less opportunities for those who we planned on hiring back."  (Letter of Russell Cox, Exh. A.)

For all these reasons, SZNW opposes this condition.

b. <u>*Proposed Conditions 4, 16, and 17*</u>

Proposed Conditions 4, 16 (in part), and 17 concern SZNW's disclosure of its financial books and records.  Condition 4 requires SZNW to provide the Probation Office with access to any requested financial information.  Condition 16 requires, in relevant part, that SZNW make periodic submissions of its financial conditions and business operations, and an accounting of the disposition of all funds received.  Condition 17 requires SZNW to "submit to (A) a reasonable number of regular or unannounced examinations of its books and records at appropriate business premises by the Probation Officer or experts engaged by the Court; and (B) interrogation of knowledgeable individuals within the organization."

These conditions are not warranted.  SZNW has already provided the Probation Office with over 650 pages of financial material in preparation for the PSR, and there were no abnormalities or concerns.  Further, the government attempts to justify this condition by pointing to "Huang's various methods of orchestrating financial bribes to Huizar and Esparza" (ECF 895 at 13), but there is no evidence that *SZNW* provided *its* funds for use as the alleged bribes or that

Huang used *SZNW funds* to commit the alleged bribes. Indeed, the bribery allegations ended in 2018, and there is no evidence that SZNW has engaged in *any* misconduct, financial or otherwise, over the past half-decade. While Probation's monitoring of an organization's finances may be appropriate in certain circumstances, it is unnecessary and inapplicable in this case.

c. *Proposed Conditions 14, 15, and 16*

Proposed Conditions 14, 15, and 16 (in part) provide that SZNW participate in a compliance and ethics program. We submit that such a program is unnecessary for *this* defendant.

As noted above, SZNW was convicted of bribery based on the government's theory that its owner, Wei Huang, provided Huizar with financial benefits so that Huang could someday, if necessary, be positioned to ask Huizar for some unknown assistance with the redevelopment of the L.A. Grand Hotel. SZNW was held liable because its owner was alleged to have engaged in this conduct for the benefit of the company. But *none* of SZNW's *current* employees were involved in the alleged misconduct.[9]

The government, citing the PSR, asserts that "SZNW currently has no compliance plan in place." (*Id*. at 11.) The government omits that since 2018, when the alleged misconduct ended (1) there have been no allegations of any wrongdoing against SZNW or its employees, (2) beginning in 2020, the City of L.A. requested SZNW's involvement in Project Roomkey to address the COVID-19 pandemic, (3) SZNW responded ethically and morally to the crisis by

_____

[9]      The government incorrectly claims that Huang's alleged misconduct was "facilitated by… multiple other employees working at his direction." (ECF 895 at 11.) In fact, only one former employee, Ricky Zheng, was alleged to have knowingly committed any misconduct. Zheng served as SZNW's General Manager for one year, in 2014, *almost a decade ago.* At Zheng's direction, a second employee, Yan Yan, signed documents to facilitate a loan to Huizar but she testified that she had no idea what she was signing. This too occurred in 2014, almost a decade ago.

LAW
OFFICES OF
RICHARD M.
STEINGARD

1  participating in Project Roomkey, (4) the City publicly praised SZNW's

2  participation in the program and its assistance in responding to the pandemic, and

3  (5) during the pendency of the case, the City granted SZNW the right to build a

4  nightclub on top of the L.A. Grand Hotel.  (*See* Letter of Russell Cox, Exh. A.)

5  Further, as stated in Mr. Cox's letter, "Chairman Huang is the hotels' owner but

6  my management team and I make virtually all of the day-to-day operational

7  decisions.  I have always operated the company in a most professional and ethical

8  manner and have never received any contrary instructions from SZNW's

9  ownership.  As an institution, and to a person, we are morally and ethically

10  responsible and have never been accused of any form of misconduct or

11  malfeasance."  (*Id*.)

12      Under the circumstances of *this* case, and for *this* corporate defendant, an

13  ethics and compliance program is unnecessary.

14          d.  <u>Community Service</u>

15      The government recommends the imposition of 5,000 community service

16  hours, including at least 25% be performed by "high-level personnel within the

17  company."  (ECF 895 at 14.)  The government offers little by way of justification

18  for this condition, merely opining that it will "repair some of the harm inflicted by

19  these offenses and for SZNW to give back to the citizens of Los Angeles."  (*Id*.)

20      Community service is a discretionary probationary condition.  18 U.S.C. §

21  3563(b)(12).  As such, it may be imposed only to the extent that it is reasonably

22  related to the nature and circumstances of the offense and history and

23  characteristics of the defendant, and only if it is reasonably necessary to punish the

24  defendant, adequately deter criminal conduct, protect the public, and provide the

25  defendant with needed rehabilitation.  *Id*. at § 3563(b).  None of these

26  considerations apply here.

27      Indeed, as set forth above, unlike most corporate businesses in this city,

28  SZNW voluntarily spent the last three years "giv[ing] back to the citizens of Los

Angeles" through its involvement in Project Roomkey.  Moreover, the proposed community service requirement would be performed by SZNW representatives and employees who had absolutely no knowledge of, or involvement in, the alleged offenses.  Thus, ordering SZNW to require its "high-level personnel" and employees to perform community service as a condition of their employment is not reasonably related to the nature and circumstances of the offense or the history and characteristics of the defendant; it is not reasonably necessary to punish SZNW, adequately deter criminal conduct, protect the public, or provide SZNW with needed rehabilitation.  In short, community service is unrelated to the alleged crime and unnecessary.